UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DAVID PUGH                              CIVIL ACTION NO. 11-cv-2184

VERSUS                                  JUDGE STAGG

WARDEN, LOUISIANA STATE                 MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

### Introduction

David Pugh, Jr. ("Petitioner"), at age 32, had sex with a 14-year-old female named D.J., who later gave birth to a child.  DNA testing showed that it was more than 99.99% likely that Petitioner was the father.  A Caddo Parish jury convicted Petitioner of molestation of a juvenile.  He was adjudicated a fourth-felony habitual offender based on prior convictions for indecent behavior with a juvenile, possession of a firearm by a convicted felon, and carnal knowledge of a juvenile.  He was sentenced to life in prison.  His conviction and sentence were affirmed on direct appeal.  State v. Pugh, 12 So.3d 1085 (La. App. 2d Cir. 2009).  Petitioner also pursued a post-conviction application in state court.  He now seeks federal habeas corpus relief.  For the reasons that follow, it is recommended the petition be denied.

### Timeliness

The State has raised a timeliness defense.  It is a significant one, but it is not capable of complete resolution on the current record.  Petitioner is entitled to the mailbox rule with

respect to his post-conviction application and his federal habeas complaint so that they were deemed filed when he tendered them to prison officials for mailing.  There are uncertainties about when Petitioner tendered both filings.

The post-conviction application has a certificate of service of March 3, 2010 (Tr. 397), but it includes a notarized declaration by Petitioner that a prison notary dated March 15, 2010.  Tr. 375.  The application was received by the state clerk of court on March 17, 2010. It cannot be determined from the record whether Petitioner turned his papers over to prison officials before the time of the notary's signature or afterward.  The 12 days between those two dates are significant in this close case of timeliness.

Petitioner signed and dated his federal complaint December 1, 2011, but it was not postmarked until 18 days later on December 19, 2011.  This court received it the next day. The 18-day gap between signing and postmarking is greater than usual and casts doubt on whether Petitioner tendered his complaint to prison officials on the same day he dated it.

The federal petition could be untimely if either of the two factual issues were resolved against Petitioner. More evidence would be required to get to the bottom of them.  Rather than explore the timeliness issue further, the undersigned will proceed to address the petition on the merits.  The timeliness defense will require resolution only if a reviewing court disagrees with the recommendation that the petition should be denied for lack of merit.

**Relevant Facts**

Most of Petitioner's claims focus on his contention that the sexual act occurred in Texas rather than Caddo Parish.  A police report summarized an interview with the victim,

D.J., who said Petitioner saw her walking down the street in Shreveport and offered to give her a ride to her grandmother's house.  Petitioner did not take her to the grandmother's house, but instead got on Interstate 20 and began asking her for sex.  D.J. told the officer that she refused to have sex with Petitioner, but he kept asking and they eventually drove outside the city limits of Shreveport.  The report did not say in which direction they drove, but Texas is about 20 miles to the west of Shreveport.  D.J. did say that they later were "driving back east on the interstate and the car broke down."  The officer wrote that D.J. "stated that she could not remember exactly where they were on the interstate but remembers passing the sign that said Welcome to Shreveport."  After calling a tow truck, Petitioner reclined the passenger seat and forced D.J. to have sex with him.  Tr. 60-61.

Detective Janice Daley, one of the investigating officers, testified at a preliminary examination that D.J. said the attack "took place on the side of Interstate 20, somewhere in between the city limit sign and the Pines Road exit."  The prosecutor asked if that was within Caddo Parish, and Daley said that it was.  She added that it was also "inside the city limits of Shreveport."  Tr. 183.

There was no affirmative testimony from any witness at trial about where the sexual act happened.  D.J. recounted how the car broke down and Petitioner began asking her for sex.  She said she told him no, but he reclined the passenger seat, climbed on top of her, pulled her clothes down, and "held both my arms back and had intercourse."  She added, "I told him to stop and he still did."  Tr. 223-7.  The only reference to location was when D.J. said:

> Well, we went - - like I said, we went on the interstate, but once we got on the interstate the car broke down.  And that's when I noticed we was like across the Dallas state line.  And the car had broke down.

Tr. 225.

D.J. said that her baby was born several months later.  She had been sexually active with other males, so she did not know who the father was.  Her mother said the child looked like Petitioner, and he came to visit the baby in the hospital.  DNA testing proved that the mother was correct.  D.J. turned 15 a few days after the baby was born.

**Sufficiency of the Evidence**

Petitioner was charged with molestation of a juvenile under La. R.S. 14:81.2(A), which provided that the crime was the commission by anyone over 17 of any lewd or lascivious act upon the person or in the presence of any child under the age of 17, where there is an age difference of greater than two years, with the intention of arousing or gratifying the sexual desires of either person, "by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile."  Petitioner argued on direct appeal that the evidence at trial was insufficient to prove the force element of the crime.  Tr. 320-22. In the "conclusion" paragraph of the brief, Petitioner made a brief assertion that the prosecution failed to establish that any element of the offense occurred in Caddo Parish or Louisiana.  Tr. 322.

The state appellate court noted that La. C. Cr. P. art. 611(A) stated that if acts constituting an offense or the elements of an offense occurred at more than one place, in or

out of the parish or state, the offense is deemed to have been committed in any parish in the state in which any such act or element occurred.  The court was convinced that Petitioner, when he picked up the child in Shreveport, had the intention of arousing or gratifying his sexual desires, he demonstrated force or duress over her by taking her somewhere other than her intended destination, and he had her on an interstate highway in Louisiana in a moving car subject to his discretion and control.  The court found that enough of the continuing criminal conduct occurred in Caddo Parish to satisfy Article 611.  The court also found the victim's testimony about the force used by Petitioner was sufficient to support the verdict. Tr. 363-65.

Petitioner did not file an application for a writ to the Supreme Court of Louisiana, so he did not exhaust his state court remedies on direct appeal.  He renewed his sufficiency of the evidence argument in his post-conviction application, but the state courts found the claim procedurally barred under La. C. Cr. P. art. 930.4(A) because the claim had been fully litigated on appeal.  Tr. 406, 490.  The State asserts a procedural bar defense to this claim, and it probably has merit.  It is easier, however, to address the claim on the merits since it was adjudicated on the merits on direct appeal and, therefore, entitled to a deference under Section 2254(d).

Petitioner argues that there was no evidence of force or violence to satisfy that element of the statute.  He points to the lack of evidence that the victim or her mother called police at the time of the incident, notes that the victim's mother brought Petitioner to the hospital to see the baby, and makes an unsubstantiated claim that the two were romantically

involved.  These arguments are defeated by the fact the victim testified that Petitioner held her arms down and forced her to have sex with him.  There was no direct evidence to the contrary.  Petitioner offers only arguments based on absence of evidence of other matters or unsupported assertions.  The same is true of the venue issue.  The state court pointed to elements of criminal conduct that happened in Louisiana, and there was no evidence in the trial record that the crime happened anywhere else.

The state court applied <u>Jackson</u> to the evidence submitted at trial.  Even if its decision might be debatable among reasonable jurists, it was certainly within the realm of a reasonable application of <u>Jackson</u> to the facts.  Habeas relief is not permitted on this claim.

**Ineffective Assistance of Counsel**

### A.  Introduction; Petitioner's Burden

Petitioner argues that counsel rendered ineffective assistance because she (1) did not file a motion to quash to challenge jurisdiction and venue and (2) did not interview or call witnesses who would have helped the defense.  To prevail on these claims, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether the

determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

### B.  No Motion to Quash

Louisiana Code of Criminal Procedure Art. 615 provides that improper venue "shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone."  It must be proven by the State by a preponderance of the evidence.  Counsel did not file a motion to quash or otherwise challenge venue in the trial court.

A different appellate counsel argued that trial counsel was ineffective by not challenging the court's authority over the case.  The appellate court noted that the pretrial information indicated the criminal acts occurred in Caddo Parish and, if Petitioner believed the act occurred in Texas, he should have provided that information to counsel. Tr. 360.  The court also found that venue had been adequately established because of evidence that some elements of the crime occurred in Caddo Parish.  Tr. 363-65.  The ineffective assistance

claim was rejected because (1) there was "ample evidence" that established Caddo Parish as the proper venue for a crime that began and ended in the parish and (2) it was possible counsel was pursuing a strategy of avoiding the excessive airing of the sordid details of the trip.  Tr. 362-63.  Petitioner raised the issue again in his post-conviction application.  The trial court noted that the appellate court had found venue proper based on the available evidence, so Petitioner had not established that if counsel filed a motion to quash the outcome of the case would have been different.  Tr. 407.  The appellate court summarily denied the ineffective assistance claim for failure of Petitioner to meet his burden.  Tr. 490.

Petitioner represents that he told his attorney before trial that the sexual contact took place in Texas, but there is no factual basis in the record to support that assertion.  This court's review of the claim "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Petitioner had ample opportunity to build a record on this issue, but he did not do so.  There is no indication that counsel should have been aware of even the potential for a venue issue until the victim testified at trial.  All the victim said at trial in this regard was that, when the car broke down, she noticed "we was like across the Dallas state line."  The state appellate court speculated that this could have been intended to refer to a road sign noting the distance to Dallas.  It is also likely that the pair were traveling back east, as described in the police report, and had crossed the Texas state line back into Louisiana when the car broke down. This would also be consistent with the victim's statement to the police officer that they had also passed the sign that said Welcome to Shreveport.  The only evidence in the record to

indicate a possible venue issue is the victim's apparently confused reference to the "Dallas state line," but that is fairly easily explained with resort to the police report and preliminary exam testimony.  Given these facts, it cannot be said that the state court's rejection of the Strickland claim was objectively unreasonable.

### C.  Witnesses

Petitioner argued in his post-conviction application that counsel was ineffective because he did not interview and call at trial three witnesses.  He claims that Linda Jefferson, the victim's mother, would have testified that the victim and Petitioner were romantically involved before the incident and that her daughter told her the car broke down near Marshall, Texas.  Petitioner claims that Kizzie Blue, his former girlfriend, would have testified that the victim came to Petitioner's home and caused a disturbance because she was jealous of Blue's involvement with Petitioner.  The third witness is an unnamed tow truck driver, who Petitioner says would testify that he picked up the car near Marshall, Texas.

The trial court ruled on the merits of this claim.  It pointed out that the molestation charge would apply, whether or not the relationship was consensual, if the perpetrator used influence by virtue of being in a position of control or supervision over the juvenile.  The victim was in a car alone with Petitioner, which the court believed satisfied that element.  The court also faulted Petitioner for not providing an affidavit or any corroborating evidence regarding what the tow truck driver would have said.  Tr. 407-08.  The appellate court summarily rejected the claim for failure of Petitioner to satisfy his burden.  Tr. 490.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." <u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2000).  To demonstrate the requisite <u>Strickland</u> prejudice on such a claim, the petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial."  <u>Id</u>.  <u>See</u> <u>also</u> <u>Bruce v. Cockrell</u>, 74 Fed. Appx. 326 (5th Cir. 2003)(rejecting <u>Strickland</u> claim because petitioner "did not submit any affidavits by the uncalled witnesses themselves, or offer any evidence that they would have been willing to testify at the punishment phase of his trial.").

Petitioner did not provide the name of the tow truck driver, the company for which the driver worked, or an affidavit or other evidence to suggest the driver could have helped the defense.  Petitioner also did not submit affidavits from the other proposed witnesses, and the state court explained why evidence of a romantic relationship between the 14 year-old victim and Petitioner would not have been a defense to the crime.  The state court's rejection of this claim was, therefore, quite reasonable based on the record before it.

**Lack of Jurisdiction**

Petitioner lists in his federal petition an argument the trial court lacked jurisdiction because the crime allegedly took place outside Louisiana.  Petitioner states that the issue will be discussed within his ineffective assistance of counsel claims.  Those claims, as well as the sufficiency of the evidence with respect to venue, were discussed above.  Petitioner has not shown a basis for relief on this claim.

**Constitutionality of Article 615**

Petitioner argued on direct appeal that La. C. Cr. P. art. 615 is unconstitutional because it allows venue to be decided by a judge rather than the jury. The appellate court declined to consider the issue because the defense did properly raise the issue in the trial court. Tr. 359-60. Petitioner repeated the argument in his post-conviction application. The trial court held that it was procedurally barred because it had been fully litigated on appeal. Tr. 406. The appellate court agreed. Tr. 490.

The state courts relied upon firmly established procedural bars to decline review of this claim. A procedural default may be excused only upon a showing of "cause" and "prejudice" or that application of the doctrine will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 111 S.Ct. at 2564 (1986). The "cause" standard requires the petitioner to show that some objective factor external to the defense impeded his efforts to raise the claim in state court. Murray v. Carrier, 106 S.Ct. 2639 (1986). As for the second factor, a "showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." Id. at 2648. Finally, the fundamental miscarriage of justice exception applies only when petitioner shows, as a factual matter, that he is actually innocent: that he did not commit the crime of conviction. Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998).

Petitioner has not demonstrated any objective factor external to the defense that would have prevented him from raising this issue in the state courts. He faults his counsel for not

raising the issue, but that issue was addressed above.  He cannot, therefore, satisfy the cause and prejudice requirement.  The fundamental miscarriage of justice exception is also inapplicable.  There is undisputed evidence Petitioner forced himself upon a juvenile.

His argument is also an abstract one because the provisions of Article 615 were never applied in this case.  There was no question regarding venue until the appeal, so neither the judge nor the jury were ever asked to make a finding regarding venue.  Petitioner is not entitled to relief on this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of March, 2015.



Mark L. Hornsby
U.S. Magistrate Judge